NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230546-U

NOS. 4-23-0546, 4-23-0547, 4-23-0548 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 2, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.D., D.D., and A.D., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
| Petitioner-Appellee, | ) | Nos. 19JA227 |
| v. | ) | 19JA228 |
| Justin G., | ) | 19JA229 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | Dwayne A. Gab, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice DeArmond and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's fitness determinations were not against the manifest weight of the
evidence.

¶ 2    Respondent, Justin G., appeals the trial court's judgment finding him to be an

unfit parent and terminating his parental rights as to his minor children, S.D. (born in

August 2016), D.D. (born in September 2017), and A.D. (born in April 2019). On appeal,

respondent challenges only the court's fitness determinations. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         In November 2019, the State filed petitions for adjudication of wardship with

respect to S.D., D.D., and A.D. in Sangamon County case Nos. 19-JA-227, 19-JA-228, and

19-JA-229, respectively. In each of the petitions, the State alleged the minors were neglected

pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2018)) because, in pertinent part, their environment was injurious to their welfare due to unsanitary conditions in the home. The minors' mother, Teveta D., who is not a party to the instant appeal, stipulated to the allegation in the State's petitions, and on March 5, 2020, the trial court entered an adjudicatory order finding the minors were neglected. In June 2020, the court entered a dispositional order finding respondent unfit, unable, or unwilling to care for the minors and making them wards of the court.

¶ 5          On July 7, 2022, the State filed petitions seeking to terminate respondent's parental rights to S.D., D.D., and A.D. The State alleged respondent was an unfit parent within the meaning of section 1(D) of the Adoption Act (750 ILCS 50/1(D)(*l*), (m)(i), (m)(ii) (West 2022)) because he failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare, (2) make reasonable efforts to correct the conditions that led to the minors' removal during any nine-month period following the adjudication of neglect, and (3) make reasonable progress toward the minors' return during any nine-month period following the adjudication of neglect. The State provided notice that the relevant nine-month periods were March 5, 2020, to December 5, 2020, and August 25, 2021, to May 25, 2022.

¶ 6          The trial court conducted a consolidated fitness hearing on December 29, 2022, February 9, 2023, and April 20, 2023. At the outset of the hearing, the court took judicial notice of the "case file" in each of the minors' cases.

¶ 7          Danielle Lewis was the minors' caseworker from June 2020 to April 2021. Lewis testified the minors "came into care due to a physical altercation between" Teveta D., respondent, and respondent's girlfriend. Respondent completed an integrated assessment in September 2020 to determine which services he would be required to complete. Lewis testified

respondent was required to cooperate with the agency, attend individual counseling for anger management, maintain housing and income, attend visits with the minors, and complete a domestic violence course called Preventing Abusive Relationships (PAR). Respondent was referred to PAR in February 2021, but he had yet to begin the course when Lewis left the case in April 2021. Lewis stated respondent communicated inappropriately with her on two separate occasions. In November 2020, respondent sent "some pornographic images" to Lewis's cell phone. In March 2021, he "cussed [her] out through text message." Lewis testified respondent consistently attended weekly visits with the minors while she was the caseworker. Respondent did not have stable housing or income at any point between June 2020 and April 2021.

¶ 8        Sarah Womack was the minors' caseworker from September 2021 to July 2022. Womack first met with respondent at the Sangamon County jail in November 2021. She informed him that he would need to "complete parenting and domestic violence and anger management services" when he was released from custody. Womack testified that around the time of her meeting with respondent, the agency decided to suspend his visitation rights with the minors due to "[h]is incarceration and the age of his children." In May 2022, while still in custody after being convicted of failing to have a firearm owner's identification card, respondent attended an "Administrative Case Review" by phone. Respondent was released from prison on July 1, 2022, and he spoke with Womack on that date. He informed her that he had completed a "90-day program" while incarcerated, but Womack was unsure as to the program's subject, and she never received verification that respondent did in fact complete it. Womack testified respondent had not completed any of his services by the time she left the case in July 2022, and at no point during her time as the minors' caseworker was he close to having them returned to his care.

¶ 9	The trial court admitted into evidence without objection a certified copy of respondent's criminal conviction for failing to have a firearm owner's identification card (430 ILCS 65/2(a)(1) (West 2020)). It showed that respondent was in custody from July 29, 2021, until he was sentenced to two years' imprisonment on November 18, 2021.

¶ 10	After hearing the arguments of the parties, the trial court found the State had proven respondent unfit by clear and convincing evidence as alleged in each count of the termination petitions. It reasoned as follows:

> "THE COURT: [Respondent] while all these initial things are going on certainly had all sorts of issues he had to deal with that he's not dealing with. And I think the biggest one is completing PAR and getting counseling and dealing with the domestic violence issues which are here, which are, you know, on multiple occasions this Court has seen evidence of domestic violence with all the parents and everyone, and that issue as well as drug usage and criminality has never been dealt with. And never to a conclusion that the Court could even be close to returning these children as we sit here today."

¶ 11	Following a best-interest hearing, the trial court entered an order terminating respondent's parental rights to S.D., D.D., and A.D.

¶ 12	Respondent appealed, and this court granted his motion to consolidate the appeals in Sangamon County case Nos. 19-JA-227, 19-JA-228, and 19-JA-229. This consolidated appeal followed.

¶ 13	II. ANALYSIS

¶ 14 On appeal, respondent argues the trial court erred in finding him unfit. He contends that there were "gaps" in the testimony of the caseworkers and the court therefore erred in issuing a "decision that was based not on all of the testimony and evidence."

¶ 15 Initially, we note respondent does not identify and challenge each individual ground for unfitness the trial court found the State had proven by clear and convincing evidence, but instead merely advances the general claim that the court's unfitness finding was erroneous. Moreover, he does not cite to any authority in the analysis section of his brief apart from a citation defining the manifest-weight-of-the-evidence standard of review. Despite these deficiencies, and because we need only find that a single ground for unfitness was supported by clear and convincing evidence, we will analyze whether the court erred in finding respondent unfit for failing to make reasonable progress towards the minors' return within any nine-month period following the adjudication of neglect. See, *e.g.*, *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005) ("A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence."). "A reviewing court will not reverse a trial court's fitness finding unless it was contrary to the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident from a review of the record." *In re A.L.*, 409 Ill. App. 3d 492, 500 (2011).

¶ 16 In a proceeding to terminate parental rights, the State must first prove by clear and convincing evidence that the parent is unfit. *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). In making such a determination, the court considers whether the parent's conduct falls within one or more of the unfitness grounds described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re D.D.*, 196 Ill. 2d 405 (2001). Under the Adoption Act, an unfit parent includes, in relevant part, any parent who fails to make reasonable progress toward his or

her child's return during any nine-month period following the neglect adjudication. 750 ILCS 50/1(D)(m)(ii) (West 2022). In addressing section 1(D)(m) of the Adoption Act, our supreme court has stated the following:

> "[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

This court has described reasonable progress as "an 'objective standard,' " which exists "when 'the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody.' " (Emphasis in original.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88 (quoting *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991)).

¶ 17     Here, the State provided notice that the relevant nine-month periods were from March 5, 2020, to December 5, 2020, and August 25, 2021, to May 25, 2022. Respondent completed an integrated assessment in September 2020. As a result of the assessment, it was determined that he would be required to cooperate with the agency, attend individual counseling for anger management, maintain housing and income, attend visits with the minors, and complete the PAR domestic violence course. Respondent was referred to PAR in February 2021, but he had yet to enroll in it when Lewis left the case in April 2021. Respondent maintained communication with the agency and attended visits with his children while Lewis was the

caseworker. However, Lewis also testified that he had sent "some pornographic images" to her cell phone on one occasion and "cussed [her] out through text message" on another. Respondent was arrested on July 29, 2021, for failing to have a firearm owner's identification card, and he remained in custody until he was released from prison on July 1, 2022. Respondent met with Womack in November 2021, attended an "Administrative Case Review" in May 2022, and informed Womack of his release from prison. In November 2021, the agency suspended respondent's visitation rights with the minors due to their age and his incarceration. Respondent allegedly completed a "90-day course" while incarcerated, but he never provided verification and it is unclear what exactly was discussed in the course. Womack testified that respondent had not completed any of his required services by the time she left the case in July 2022.

¶ 18          We find the trial court's unfitness finding based on respondent's failure to make reasonable progress towards the minors' return to his care was not against the manifest weight of the evidence. The only arguable progress respondent made throughout the case consisted of visiting the minors until his arrest in July 2021 and maintaining communication with the agency. However, even his communication with the agency was not totally compliant considering the inappropriate messages he sent to Lewis. Respondent's arrest also prohibited him from further complying with the visitation requirement. While we acknowledge respondent's efforts to maintain contact with the agency while incarcerated and allegedly completing a course while in prison, his efforts do not change the fact that he was unable to make progress towards completion of any of the required services from July 29, 2021, to July 1, 2022. Womack specifically testified that as of July 2022, which was two months after the completion of the second nine-month period identified in the State's termination petitions, respondent had not completed a single service required of him. While there were minor inconsistencies between

Lewis's and Womack's testimony, the evidence was uncontradicted that respondent was unable to make any progress while incarcerated. See *In re J.L.*, 236 Ill. 2d 329, 340-43 (2010) (holding that "time spent in prison does not toll the nine-month period"). Accordingly, we reject respondent's argument and find the court's unfitness findings were not against the manifest weight of the evidence.

¶ 19                                    III. CONCLUSION

¶ 20           For the reasons stated, we affirm the trial court's judgment.

¶ 21           Affirmed.